**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | |
|---|---|
| ALBERTO MORA, ROSENDO HERNANDEZ, JOSE ENCARNACION and CYNTHIA GITONGA, on behalf of themselves and on behalf of other similarly-situated individuals, : : : : : | Civil Case No.: 16-cv-05349 (JPO) |

ALBERTO MORA, ROSENDO HERNANDEZ,                    :
JOSE ENCARNACION and CYNTHIA                         :
GITONGA, on behalf of themselves and on behalf       :
of other similarly-situated individuals,             :        Civil Case No.: 16-cv-05349 (JPO)
                                                     :
                        Plaintiffs,                  :
                                                     :
        – against –                                  :
                                                     :
230FA LLC d/b/a 230 FIFTH AVENUE,                    :
                                                     :
                        Defendant.                   :
-------------------------------------------------------------------x

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**</u>
<u>**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS**</u>
<u>**SETTLEMENT AND THE PAYMENT OF SERVICE AWARDS**</u>

Submitted by:

**WIGDOR LLP**

David E. Gottlieb
Tanvir H. Rahman
Alex J. Hartzband

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845

*Attorneys for Named Plaintiffs*
*and Class Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.      BACKGROUND. .................................................................................................................1

II.     PROCEDURAL HISTORY..................................................................................................3

III.    THE TERMS OF THE PROPOSED SETTLEMENT ........................................................4

        A.      Settlement Consideration .........................................................................................4

        B.      Attorneys' Fees and Litigation Costs......................................................................5

        C.      Service Awards to Class Representatives ................................................................5

        D.      Timing of Settlement Payments...............................................................................6

        E.      Settlement Allocation Formula ................................................................................6

        F.      Release of Claims ....................................................................................................7

        G.      The Notice Process and Positive Reaction From the Putative Class .......................7

IV.     ARGUMENT ........................................................................................................................8

        A.      The Settlement Class Meets the Legal Standard for Class Certification ................8

                1.      The Class is so Numerous that Joinder of All Members is Impracticable......9

                2.      Questions of Law and Fact Common to the Class Predominate Over
                        Questions Affecting Only Individual Class Members ...................................9

                3.      Plaintiff's Claims are Typical of the Claims of the Class............................10

                4.      Plaintiffs Have Fairly and Adequately Protected the Interests of the Class .11

        B.      Certification is Proper Under Rule 23(b)(3) ..........................................................12

                1.      Common Questions Predominate ................................................................12

                2.      A Class Action is a Superior Mechanism ...................................................13

        C.      The Proposed Settlement is Fair, Reasonable and Adequate and Should be
                Approved in all Respects ........................................................................................14

1.   The Proposed Settlement is Procedurally Fair...............................................14

2.   The Proposed Settlement is Substantively Fair ...........................................15

    i.    Litigation Through Trial Would Be Complex, Costly, and Long
          (Factor 1) ..........................................................................................15

    ii.   The Reaction to the Settlement Has Been Positive (Factor 2) .........16

    iii.  Sufficient Discovery Has Taken Place to Allow the Parties to
          Resolve the Case Responsibly (Factor 3) .........................................17

    iv.   Plaintiffs Would Face Real Risks at Trial if This Case Proceeded
          (Factors 4 and 5) ..............................................................................19

    v.    Establishing a Class and Maintaining the Class Through Trial Would
          Not Be Simple (Factor 6) ................................................................20

    vi.   Defendants' Ability to Withstand a Greater Judgment is Not Clear
          (Factor 7) ..........................................................................................21

    vii.  The Settlement Fund is Substantial, Even in Light of the Best
          Possible Recovery and the Attendant Risks of litigation (Factors 8
          and 9) ................................................................................................21

    D.   Class Representatives' Merit Service Awards.......................................24

V.  CONCLUSION...............................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

Amchem Prods. Inc. v. Windsor,
  521 U.S. 591 (1997) ................................................................................................. 12

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
  222 F.3d 52 (2d Cir. 2000) ...................................................................................... 11

Cagan v. Anchor Sav. Bank FSB,
  No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................ 22

City of Detroit v. Grinnell Corp.,
  495 F.2d 448 (2d Cir. 1974) ...................................................................................... 14

Clark v. Ecolab, Inc.,
  Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 CIV 5672 (PAC), 2009 WL 6615729
  (S.D.N.Y. Nov. 27, 2009) .......................................................................................... 14

Consol. Rail Corp. v. Town of Hyde Park,
  47 F.3d 473 (2d Cir. 1995) .......................................................................................... 9

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
  502 F.3d 91 (2d Cir. 2007) ........................................................................................ 12

Damassia v. Duane Reade, Inc.,
  2009 WL 5841128 (GEL) .......................................................................................... 17

Diaz v. E. Locating Serv. Inc.,
  No. 10 Civ. 4082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .................. 23

Frank v. Eastman Kodak Co.,
  228 F.R.D. 174 (W.D.N.Y. April 29, 2005) .................................................... *passim*

Gen. Tel. Co. of SW v. Falcon,
  457 U.S. 147 (1982) ................................................................................................... 10

In re Austrian & German Bank Holocaust Litig.,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................... 15, 17, 19, 21

In re Warfarin Sodium Antitrust Litig.,
  391 F.3d 516 (3d Cir. 2004) ...................................................................................... 17

Johnson v. Brennan,
  No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............ 23, 26

Khait, et al. v. Whirlpool Corp, et al.,
    No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan 20, 2010) .................................. 13

Maley v. Dale Global Techs. Corp.,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................................... 16

Marriott v. Cnty. of Montgomery,
    227 F.R.D. 159 (N.D.N.Y. 2005) ............................................................................................ 12

Matheson v. T-Bone Rest., LLC,
    No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ............................... 26

McBean v. City of New York,
    228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................................ 12

Murphy v. Lajaunie,
    No. 13 Civ. 6503 (RJS), 2016 WL 1192689 (March 21, 2016) ........................................ 19, 20

Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ................................................................................................. 22

Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,
    698 F.2d 150 (2d Cir. 1983) ................................................................................................ 9, 10

Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,
    237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................................... 9

Reyes v. Altamarea Grp., LLC,
    No. 10 Civ. 6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ................................ 28

Reyes v. Buddha-Bar NYC,
    No. 08 Civ. 02494 (DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................ 10, 26

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,
    No. 94 Civ. 5587 (PKL)(RLE), 2003 WL 21136726 (S.D.N.Y. May 15, 2003) .................... 16

Roberts v. Texaco, Inc.,
    979 F. Supp. 185 (S.D.N.Y. 1997) .......................................................................................... 24

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993) .................................................................................................... 10

Schear v. Food Scope Am., Inc.,
    297 F.R.D. 114 (S.D.N.Y. 2014) ............................................................................................ 19

Silberblatt v. Morgan Stanley,
   524 F. Supp. 2d 425 (S.D.N.Y. 2007)..................................................................................... 25

Torres v. Gristede's Corp.,
   No. 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)........................... 12, 19

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
   396 F.3d 96 (2d Cir. 2005).................................................................................................... 14

## **Other Authorities**

29 U.S.C. §§ 201 ....................................................................................................................... 1

N. Y. Exec. Law, §§ 650 *et seq.* ...................................................................................... *passim*

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Named Plaintiffs Alberto Mora, Rosendo Hernandez, Jose Encarnacion and Cynthia

Gitonga ("Named Plaintiffs") and Opt-In Plaintiffs Nicolas Chiquito, Frank Marzan, Andres

Apolinar and Billy Quizhpi ("Opt-In Plaintiffs") (together, "Plaintiffs"), without opposition from

Defendant 230FA LLC d/b/a 230 Fifth Avenue, ("230 Fifth," and with Plaintiffs, the "Parties"),

move for final approval of the proposed Settlement Agreement ("Settlement" or "Agreement,"

attached as Ex. 1[1]) and payment of service awards.  For the reasons below, the Settlement

satisfies all of the criteria for final approval.  Accordingly, Plaintiffs respectfully request that the

Court approve the Proposed Final Approval Order attached as Ex. 2.

## I.      <u>BACKGROUND</u>

On July 6, 2016, Named Plaintiffs, former Servers, Bussers and Runners employed at 230

Fifth, a restaurant and bar located in the Flatiron District in New York City, filed the instant

proposed class and collective action asserting claims against 230 Fifth for, *inter alia*:  (i) failure

to pay minimum wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201

*et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.*; (ii) unlawful distribution of

gratuities pursuant to NYLL § 196-d to tip-ineligible employees, namely Expeditors; and (iii)

unlawful retention of gratuities pursuant to NYLL § 196-d related to private events.  <u>See</u> Ex. 3

(the "Complaint").

Named Plaintiffs alleged that they and other tipped employees whom they sought to

represent were paid a reduced tipped minimum wage and were required to participate in a tip

pool that included tip-ineligible employees, namely Expeditors.  <u>Id.</u> at ¶¶ 11-17.  Named

Plaintiffs alleged that Expeditors did not perform "tipped" duties and/or did not have meaningful

interaction with customers, and  as a result, 230 Fifth was not entitled to use the tip credit

---

[1]      All exhibits and paragraphs are referred to herein as "Ex. __" and "¶ __," respectively,
and attached to the Affirmation of David E. Gottlieb ("Gottlieb Aff.").

minimum wage, and now owed tipped service employees payment of the tip credit unlawfully

taken.  <u>Id.</u>  Named Plaintiffs also alleged that any tips paid to Expeditors must be disgorged and

paid back to tipped service employees pursuant to NYLL § 196-d.  <u>Id.</u> at ¶¶ 18, 68-72.

In addition, in the course of discovery, Class Counsel became aware of 230 Fifth's

alleged practice of requiring Bussers and Runners to spend a meaningful portion of most of their

shifts (no less than 20% or two hours during the shifts, whichever was less) performing work that

did not generate tips (*i.e.* the "80/20 Rule"), including the set up and moving of furniture,

cleaning and garbage disposal, all while still being paid for this work at the minimum wage tip

credit rate.  ¶ 33.  As such, Named Plaintiffs also alleged that Defendant was not entitled to take

a minimum tip credit as to Bussers and Runners, and now owe back any tip credit taken as to

these employees.  Ex. 1 at ¶¶ 12-13.

Named Plaintiffs also alleged that 230 Fifth has held many private events for which

customers were required to pay an automatic/mandatory "charge" (called an "administrative and

operations charge") of 20%, which Named Plaintiffs contend was understood by private event

customers to constitute a gratuity, but of which no portion was remitted to service employees, in

violation of NYLL § 196-d.  <u>Id.</u> at ¶¶ 19-24.

Defendant has at all times denied the allegations in this case, and asserted that it has at all

times complied with the FLSA and NYLL, including by properly compensating its employees

and by paying tipped service employees a reduced tipped minimum wage in accordance with

applicable law.  Defendant further asserts, *inter alia,* that Bussers and Runners did not perform a

meaningful amount of side work such that Defendant's ability to pay them at the minimum wage

tip credit rate for all hours would be jeopardized, and that even if the tip pool was polluted, only

Bussers and Runners were impacted given the structure of 230 Fifth's tip pool.  Defendant also

maintains that the 20% "administrative and operations charge" which customers pay in connection with private events is not a tip, gratuity or service charge, and that its private event customers were provided with express disclosures in writing stating that these charges were not subject to distribution to any 230 Fifth employees as a tip, gratuity or service charge.

## II.    PROCEDURAL HISTORY

Shortly after commencing the action, Named Plaintiffs filed a pre-motion conference letter with the Court requesting leave to file a motion for FLSA conditional certification.  See Dkt. No. 14; ¶ 17.  Subsequently, the Parties began discussions regarding conditional certification and mediation, with the goals of expeditiously conducting targeted discovery, evaluating the claims, and negotiating a class-wide resolution.  ¶ 18.  To this end, Defendant consented to the conditional certification of an FLSA Collective and the dissemination of a collective action notice to putative collective action members.  ¶ 19.  The Parties negotiated and agreed upon the forms of a Court-authorized collective action notice, email and text message notice, and workplace posting, which were submitted to the Court.  See Dkt. No. 24; ¶ 20.  The parties also submitted a proposed Stipulation and Proposed Order which would resolve Plaintiffs' anticipated motion for conditional certification, but requested that the Court hold the endorsement of the Stipulation and Proposed Order and the ordering of collective action notice dissemination in abeyance pending the outcome of the mediation.  See Dkt. No. 24; ¶ 21.

Around this time, the Parties scheduled a day-long mediation with experienced employment mediator, Carol Wittenberg of JAMS.  ¶ 22.  The parties also exchanged hundreds of pages of targeted, pre-mediation discovery and other information, which included:

i.    Employee manuals, relevant policies and procedures, and job descriptions;
ii.   A random sampling of private event contracts;
iii.  The estimated amount of fees collected by 230 Fifth during the relevant time period pursuant to the "administrative and operations charge;"

      iv.      Named Plaintiffs' personnel files;
      v.      Payroll records for Named Plaintiffs and Class Members, differentiated by position;
      vi.      Time records for Plaintiffs and Class Members, differentiated by position;
      vii.      Payroll and time records for employees working as Expeditors; and
      viii.      Written policies concerning 230 Fifth's tip pool/tip sharing procedures.

¶ 23.  The parties also held numerous "meet and confers," during which the parties held candid discussions regarding the claims, defenses and potential damages in this case, so that the Parties could prepare for the mediation with a full and meaningful understanding of the issues likely to be raised.  ¶ 25.  Based on a thorough review of the documents and information exchanged between the parties, and with the input of Plaintiffs, Class Counsel prepared a comprehensive pre-mediation brief, which contained detailed damages calculations and charts.  ¶ 47. Defendant's counsel also prepared a pre-mediation brief, for submission to the mediator.

On December 7, 2016, the Parties attended a day-long mediation with Ms. Wittenberg, and were able to negotiate the framework of a class-wide resolution, which was memorialized in a Memorandum of Understanding.  See Ex.4; ¶ 53.  The Parties subsequently drafted the Agreement, which has been executed by all Parties.  See Ex. 1.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

### A.   Settlement Consideration

Defendant has agreed to pay $425,000.00 into a settlement fund (the "Settlement Fund") to resolve this action on a class basis for the time period of December 31, 2013[2] through February 14, 2017.[3]  See Ex. 1 at §§ 2.28.  The Settlement Fund will be the common claim fund

---

[2]      December 31, 2013 was the approximate end date of the covered settlement class period in the prior Golovko v. 230 FA LLC, d/b/a 230 Fifth Avenue wage and hour class action filed on behalf of 230 Fifth service employees.  See No. 12-cv-8307(AKH), at Dkt. No. 34-4 ("Stipulation of Class Action Settlement").

[3]      February 14, 2017 was the date on which the Settlement Agreement was fully executed by Plaintiffs and Class Counsel.  See Ex. 1.

from which:  (i) all Class Members who participate in the settlement receive their allocated share; (ii) Class Counsel will be compensated for their fees and reimbursed for expenses; (iii) certain Plaintiffs will receive service awards ("Service Awards"); and (iv) the costs of administrating the Settlement will be paid.  Id. at § 2.32.

B.     **Attorneys' Fees and Litigation Costs**

In a separate memorandum filed concurrently herewith, Class Counsel has applied for an attorneys' fees award of 33 and 1/3% of the Fund (or $141,666.66), plus $1,048.05 in reasonable litigation expenses.[4]  See Ex. 1 at § 3.6(B).  All Class Members were notified of Class Counsel's fee in the Notice.  Ex. 7; ¶ 62.  No Class Members whose deadline to object to the settlement has already passed,  have objected to the Settlement, and three Class Members out of 740 have timely opted-out of the Settlement.[5]  ¶ 73; Ex. 7.

C.     **Service Awards to Class Representatives**

Class Representatives (defined in the Settlement) request Service Awards in recognition of the services they rendered to the Class, which ultimately led to the favorable class-wide settlement.  The total amount requested for Service Awards is $20,000.00, which is approximately 4.7% of the total settlement of $425,000.00.  ¶ 82.  Putative Class Members were notified of the Class Representatives' request for Service Awards in the Notice.  Ex. 6; ¶ 62.  As stated above, no Class Members have objected to the Settlement or otherwise requested to speak

---

[4]     Notably, as a term of the Settlement, Defendant agreed to reimburse Class Counsel for Plaintiffs' share of mediation costs, which amounts to $4,753.27, effectively increasing the amount of the Settlement Fund distributable to Class Members by that amount.  Ex. 1 at § 3.7; ¶ 98.

[5]     One putative Class Member named Michelle Silvani submitted an untimely opt-out request postmarked July 18, 2017 (her deadline to submit an opt-out request was July 14, 2017).  See Ex. 12; ¶ 74.

at the Fairness Hearing, while three Class Members have timely opted-out of the class.  ¶ 73; Ex.

7.

        **D.**        **Timing of Settlement Payments**

        Defendant will make payment of the Settlement Fund to the Claims Administrator, who

will be responsible for distributing settlement payment to Class Members who did not opt-out of

the class pursuant to the agreed upon allocation formula, within 10 days after the Final Effective

Date.  Ex. 1 at § 3.7.  Unclaimed settlement funds will be donated to a mutually agreed upon *cy*

*pres* designee associated with Memorial-Sloan Kettering Cancer Center, unless the amount

remaining in the Settlement Fund is more than $20,000, in which case 70% of the amount will be

redistributed on a *pro rata* basis to Class Members who redeemed their initial checks, with the

remainder donated to the *cy pres* designee.  Id. at § 4.1(F).

        **E.**        **Settlement Allocation Formula**

        The portion of the Settlement Fund payable to the Class Members will be divided among

the Class Members according to the following allocation:

        i.      Class Members who worked as Bussers or Runners shall each
             receive 1 point for each hour worked in the capacity of a Busser or
             Runner during the Relevant Time Period;

        ii.     Class Members who worked as Banquet Employees shall each
             receive 0.25 points for each hour worked in that capacity during the
             Relevant Time Period; and

        iii.    All other Class Members shall each receive 0.5 points for each hour
             worked during the Relevant Time Period.

Id. at § 4.1(A). The Settlement Fund, after deductions for Service Awards, Claims Administrator

fees, Court-approved attorneys' fees, costs and expenses, and any other Court-approved expenses

or disbursements (also referred to as the Net Settlement Fund), will be divided by the aggregate

number of points accrued by all Class Members (which is also referred to as the Aggregate Point

Value).  Id. at § 4.1(B).  Each Class Member's total points will be multiplied by the Aggregate

Point Value to determine his or her initial allocated share of the Net Settlement Fund (also

known as the Class Member's Individual Settlement Amount).  Id. at § 4.1(C).

### F.    Release of Claims

The Agreement contemplates the following with regard to releases:

o    Any Class Member who does not submit an Opt-out Statement
     pursuant to the Agreement will be deemed to have accepted the
     Settlement, including all terms and conditions of the Agreement,
     will be bound by the Final Order and Judgment of Dismissal with
     Prejudice, and will have any and all State Law Claims released and
     dismissed with prejudice.  Ex. 1 at § 5.1(A).

o    Any Class Member who does not submit an Opt-out Statement
     pursuant to the Agreement and who redeems a Settlement Check
     will, in addition to the release and dismissal with prejudice of any
     and all State Law Claims, have any and all FLSA Claims released
     and dismissed with prejudice.  Id. at § 5.1(B).  For the avoidance
     of any doubt, any Class Member who has not redeemed a
     Settlement Check shall not release his or her FLSA Claims.  Id.

o    Plaintiffs receiving Service Awards will, in addition to a release
     and dismissal of any and all State Law Claims and FLSA claims as
     set forth above, agree to a general release of all claims.  Id. at §
     5.1(D).

### G.    The Notice Process and Positive Reaction From the Putative Class

The Court has approved Garden City Group, LLC ("GCG") to serve as Claims

Administrator.  Ex. 2 at § 9.  On or about May 18, 2017, GCG was provided with a list of 725

Class Members' contact information, and subsequently mailed Court-approved Notices of

Settlement ("Notices") to these 725 Class Members, who were given a deadline of July 14, 2017

to opt-out of the class or object to the settlement.  On or about July 13, 2017, Defendant provided

an amended list identifying 14 additional Class Members, who were inadvertently left off of the

original class notice.  On or about July 26, 2017 GCG then mailed these 14 Class Members the

Court-approved Notices.  <u>See</u> Ex. 7 at ¶ 3-4.  Requests for exclusion or objections from these individuals have to be postmarked by September 9, 2017.  <u>Id.</u> at ¶ 6.  Further, on August 8, 2017, Defendant's counsel informed GCG of one additional Class Member who was erroneously omitted from the original Class List, bringing the total number of Class Members to 740.  <u>Id.</u> at ¶ 3.  This Class Member was mailed a Notice on August 15, 2017, and any request from exclusion or objection from this Class Member will have to be postmarked by September 29, 2017.  <u>Id.</u> at ¶ 6.  To date, none of the 15 Class Members who received late Notices have submitted exclusion requests or objections.  ¶ 7.

During the notice process, GCG took reasonable steps to obtain the correct address of each Class Member whose Notice was returned as undeliverable, including running skip traces, and kept counsel regularly informed as to the status of reissued Notices.  ¶ 71.  Of the 740 putative Class Members, only 11 appeared to not have had a Notice delivered to them (comprising 1.5% of the putative Settlement Class, defined below).  <u>Id.</u> at ¶¶ 71-72.  No putative Class Member has submitted an objection, and three putative Class Member have timely opted-out of the Settlement.  <u>Id.</u> at ¶ 73; Ex. 7 at ¶ 6.

Upon the Court's final approval of the Settlement, GCG will issue payments to 737 Class Members (assuming none of the 15 class members who received late notices opt out between now and their respective deadline to submit exclusion requests).  GCG estimates the total cost of administration of the Settlement to be $15,300.  Ex. 7 at ¶ 8.

IV.  <u>ARGUMENT</u>

    A.  <u>The Settlement Class Meets the Legal Standard for Class Certification</u>

On May 8, 2017, the Court provisionally certified the Settlement Class (defined below), and memorialized its decision in an Order.  <u>See</u> Dkt. No. 39; Ex. 5.  For purposes of effectuating

the settlement, the Parties seek certification of a class of all individuals who worked as Bussers,

Runners, Servers, Bartenders, Barbacks and Banquet Staff and any other "tipped" service

employee for 230 Fifth from December 31, 2013 to February 14, 2017 (the "Settlement Class").

Here, for the reasons set forth below, the Settlement Class satisfies the requirements under

Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).  Rule

23(a) requires numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ.

P. 23(a).  Rule 23(b)(3) requires the Court to find that questions of law or fact common to

members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy.  Id. at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than

restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class

certification.  Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 31 (E.D.N.Y.

2006) (internal citation omitted).

### 1. The Class is so Numerous that Joinder of All Members is Impracticable

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members."

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Here, Plaintiffs

easily satisfy the numerosity requirement because there are 740 Class Members.  See Declaration

of GCG, Ex. 7 at ¶ 3.

### 2. Questions of Law and Fact Common to the Class Predominate Over Questions Affecting Only Individual Class Members

The commonality requirement tests "whether the named plaintiff's claim and the class

claims are so interrelated that the interests of the class members will be fairly and adequately

protected in their absence." <u>Gen. Tel. Co. of SW v. Falcon</u>, 457 U.S. 147, 157 n.13 (1982).

Claims need not be identical, but must share common questions of fact or law. <u>See</u> <u>Port Auth.</u>

<u>Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.</u>, 698 F.2d 150, 153-54 (2d Cir. 1983).

The claims of Plaintiffs and Class Members have common issues, including: (i) whether

Defendant unlawfully applied a minimum wage tip credit by permitting purported non-service

employees to participate in the tip pool; (ii) whether Defendant unlawfully distributed

tips/gratuities to purported non-service employees; and (iii) whether Defendant unlawfully

retained tips/gratuities collected from private events.

### 3.    Plaintiffs' Claims are Typical of the Claims of the Class

Rule 23 requires that the claims of the representatives be typical of the claims of the

class, but "does not require the representative party's claims to be identical to those of all class

members." <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174 at 182.  "Minor variations . . .

underlying individual claims" do not defeat typicality when the defendant directs "the same

unlawful conduct" at the named plaintiffs and the class.  <u>Robidoux v. Celani</u>, 987 F.2d 931, 936-

37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases

of Class Members' claims because Defendant: (i) applied the same wage practices, policies and

structures to all putative Class Members; (ii) assigned similar job duties to the putative Class

Members; and (iii) allegedly did not pay the putative Class Members all of their gratuities and/or

wages.  <u>See</u>, <u>e.g.</u>, <u>Reyes v. Buddha-Bar NYC</u>, No. 08 Civ. 02494 (DF), 2009 WL 5841177, at *2

(S.D.N.Y. May 28, 2009) (typicality satisfied where plaintiffs' and class members' claims arose

from same factual and legal circumstances, including whether defendants misappropriated

mandatory service charges paid by event customers).

### 4.    Plaintiffs Have Fairly and Adequately Protected the Interests of the Class

Rule 23(a)(4) requires that "representative parties [] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To determine adequacy, courts inquire whether: "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  Here, there has been no assertion that Plaintiffs have interests that are antagonistic with Class Members'.  ¶ 76. Rather, Plaintiffs have shown their commitment to the Class by, *inter alia*: (i) participating in the prosecution of this case, including reviewing and approving pleadings; (ii) searching for relevant documents; (iii) answering questions pertaining to the claims and defenses; (iv) meeting and communicating with Class Counsel at all stages; (v) preparing for, attending and actively participating in a mediation; (vi) undertaking the risk of retaliation; and (vii) undertaking the risk of being liable for expenses in the event of an unfavorable outcome.  ¶ 77.

Moreover, Class Counsel has done substantial work identifying, investigating and prosecuting Plaintiffs' claims, and has substantial experience prosecuting and resolving employment class actions, including wage-and-hour class actions, is well-versed in the substantive law at issue, and is well-qualified to represent the interests of the class.  Class Counsel has been approved as class counsel in similar wage-and-hour actions by courts within courts in this state.  See e.g. Cordero, et al. v. New York Institute of Technology, No. 12 Civ. 3208 (GRB), Dkt. Nos. 60, 72 (E.D.N.Y. Mar. 17, 2016); Alom, et al. v. 13th Street Entertainment LLC, et al., No. 14 Civ. 8707 (SN), Dkt. Nos. 71, 80 (S.D.N.Y. Feb. 2, 2016); Raniere, et al. v. Citigroup Inc., et al., No. 11 Civ. 2448 (RWS), Dkt. Nos. 163, 174 (S.D.N.Y. Sep. 29, 2015); Munir, et al. v. Sunny's Limousine Service, Inc., et al., No. 13 Civ. 01581

11

(VSB), Dkt. Nos. 145, 155 (S.D.N.Y. Jan. 8, 2015).  Finally, as is detailed in Plaintiffs'

accompanying motion seeking the approval for attorneys' fees and reasonable litigation costs,

Class Counsel has committed substantial resources in prosecuting and settling this action.

### B.      Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact be present and "predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997).

### 1.      Common Questions Predominate.

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof."  Cordes & Co. Fin. Servs., Inc. v.

A.G. Edwards & Sons, Inc., 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether

"liability can be determined on a class-wide basis, even when there are some individualized

damage issues."  Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 173 (N.D.N.Y. 2005).

Where claims are "unified by a common legal theory" and by common facts, the predominance

requirement is satisfied.  McBean v. City of New York, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs assert – and Defendant agrees for settlement purposes only – that core

factual allegations and legal theories predominate over any factual or legal variations among

Class Members.  See, e.g., Torres v. Gristede's Corp., No. 04 Civ. 3316 (PAC), 2006 WL

2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (predominance satisfied where plaintiffs "introduced

sufficient proof that defendants engaged in common practice to deny employees overtime pay").

## 2.    A Class Action is a Superior Mechanism.

Rule 23(b)(3) sets forth a non-exclusive list of relevant factors that concern whether the class action device is superior to other methods available for a fair and efficient adjudication of a controversy, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individuals wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.  Khait, et al. v. Whirlpool Corp., et al., No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *3.  In this case, Plaintiffs do not have substantial financial resources to prosecute individual actions, and many of the Class Members are likely to be similarly situated.  ¶ 83.  Further, Class Counsel is unaware of any individual lawsuits that have been filed by Class Members arising from the same alleged allegations.  ¶ 84.  Moreover, only three Class Members have timely requested to opt-out of this Class Settlement, and none have tendered an objection to the Class Settlement, demonstrating that the overwhelming majority of Class Members are willing to forego their right to bring individual actions against Defendant in favor of participating in this Class Settlement.  Regarding the forum, concentrating the litigation in this Court is desirable because Defendant conducts a substantial amount of their business within the jurisdiction of this Court, and many of the putative members reside in this jurisdiction.  ¶ 87.  Finally, employing the class device in the context of this settlement will not only achieve economies of scale for Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the

13

waste and delay of repetitive proceedings, and preventing inconsistent adjudications of similar issues and claims.

> **C.**      **The Proposed Settlement is Fair, Reasonable and Adequate and Should be Approved in all Respects**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005).  To determine substantive fairness, courts generally evaluate whether the settlement's terms are fair, adequate, and reasonable according to the nine factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974).

> **1.   The Proposed Settlement is Procedurally Fair**

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  Wal-Mart Stores, 396 F.3d at 116.  The proposed settlement is procedurally fair because it was reached through a full-day mediation session before one of the nation's pre-eminent labor and employment mediators, Carol A. Wittenberg of JAMS.  Moreover, the settlement negotiations were at all times at arm's-length and between capable and experienced counsel, after counsel had conducted a thorough investigation and evaluated the merits of the claims.  "In evaluating the settlement, the Court should keep in mind the unique ability of the class and defense counsel to assess the potential risks and rewards of litigation . . ."  Clark v. Ecolab, Inc., Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 CIV 5672 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).  This is particularly true where, as here, the Parties have engaged in litigation, negotiation and information/document exchange that have allowed

them to thoroughly assess the challenges associated with, *inter alia*, certification, the merits and collectability.

## 2.   The Proposed Settlement is Substantively Fair

The Second Circuit in Grinnell Corp. provided the analytical framework for evaluating the substantive fairness of a class action settlement by outlining nine factors that should guide district courts in this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.  495 F.2d at 463.  Here, all of the Grinnell factors weigh in favor of final approval of the Agreement.

### i.   *Litigation Through Trial Would Be Complex, Costly, and Long (Factor 1)*

By reaching a favorable settlement prior to more protracted litigation, extensive, additional discovery, rounds of complex motion practice, and trial and appeals, the Parties seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the Class Members.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, with 737 Class Members, covering a period of nearly four years, and a variety of federal and state law claims.  Indeed, the Parties engaged in targeted, pre-mediation discovery, which, even in such an abbreviated form consisted of, *inter alia*, the exchange and analysis of hundreds of pages of

documents, and hundreds of thousands of rows of data on numerous spreadsheets.  ¶¶ 4, 6.

Although this discovery was targeted in nature, the production, review and analysis of discovery

was extremely time-consuming and expended significant resources.  ¶ 26.

Further litigation without settlement would necessarily result in additional expense and

delay.  Full discovery would likely include thousands of documents, dozens of depositions,

expert witness discovery, and almost certainly numerous motions to compel.  ¶¶ 27-29.

Following discovery, there would be contested motions for decertification of the FLSA collective

action and certification of the NYLL class action, and both Parties would likely move for full or

partial summary judgment.  ¶ 28.  Thereafter, a complicated trial will be necessary and consume

tremendous amounts of time and resources for both sides, as well as require substantial judicial

resources.  Even after a potential judgment at trial, any judgment will likely be appealed, further

extending the litigation.  ¶ 29.  This Settlement, on the other hand, makes monetary relief

available to Class Members in a prompt, efficient, and relatively risk-free manner.

### ii.   The Reaction to the Settlement Has Been Positive (Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."  Maley v. Dale Global Techs.

Corp., 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  The lack of class member objections "may

itself be taken as evidencing the fairness of a settlement."  RMED Int'l, Inc. v. Sloan's

Supermarkets, Inc., No. 94 Civ. 5587 (PKL)(RLE), 2003 WL 21136726, at *1 (S.D.N.Y. May 15,

2003).

Here, the Class Notice disclosed the amount of the Settlement Fund, the applicable

reductions to the Settlement Fund for Claims Administration costs, Service Awards, and Class

Counsel's attorneys' fees, an estimate of the amount each Class Member would receive, and

informed Class Members that their monetary award will be based on the number of hours and

position(s) they worked during the relevant liability period.  See Notice of Settlement ("Notice")

(attached as Ex. 6); ¶ 62.  The Notice also informed Class Members that they could object to or

exclude themselves from the settlement, and explained how to do so.  Ex. 6.  No Class Member,

whose deadline to object to the settlement has passed, has objected to the settlement, and only

three Class Members have timely affirmatively opted-out.  Ex. 7 at ¶ 6.  This overwhelmingly

favorable response demonstrates that the Class approves of the results, which supports final

approval.  See Damassia v. Duane Reade, Inc., 2009 WL 5841128 (GEL), at *2 (S.D.N.Y. July

27, 2009) (finding settlement to be fair, reasonable, and adequate where no class members

objected and only one class member opted-out).

> ### iii. Sufficient Discovery Has Taken Place to Allow the Parties to Resolve the Case Responsibly (Factor 3)

As detailed above, the Parties have conducted significant targeted discovery, which is

more than sufficient to resolve the action responsibly.  The proper question to ask at this stage is

"whether counsel had an adequate appreciation of the merits of the case before negotiating."  In

re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004).  "The pretrial

negotiations and discovery must be sufficiently adversarial that they are not designed to justify a

settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."

In re Austrian, 80 F. Supp. 2d at 176.

Here, as detailed above, the targeted discovery that was exchanged meets and, in fact,

exceeds this standard.  Class Counsel conducted extensive damages analyses, which involved

multiple spreadsheets incorporating numerous factors, including the number of hours and

specific positions worked by Class Members.  ¶ 24.

To determine the potential amount of gratuities owed to Class Members based on the

administrative and operations charge" collected at private events, and to assess the relative strength of this claim, Class Counsel reviewed hundreds of pages of private event contracts, invoices and receipts. ¶ 30. However, based on Class Counsel's review of the discovery produced by Defendant, it appeared that Defendant has somewhat strong arguments that a reasonable customer did not believe that these charges were gratuities, including because of the presence of explicit disclaimers stating that these charges were "administrative and operations charges" and not gratuities. ¶ 31. Nonetheless, Plaintiffs had arguments to challenge the sufficiency of the disclaimers, and were prepared to take full discovery on this claim, which would conceivably include the production and review of relevant communications between Defendant and its private event customers, as well as the depositions of private event customers to ascertain what their understandings were as to the nature of the charges. ¶ 32.

Further, to assess the potential value of Plaintiff's minimum wage claims, Class Counsel reviewed documents reflecting the wages received and the total number of hours worked by Class Members who were paid at a tip credit rate to calculate the potential tip credit owed due to Defendant's allegedly unlawful inclusion of Expeditors in the tip pool. ¶ 35. Based on this review, Class Counsel estimated that, at most, the total amount of minimum wage damages to be approximately **$250,000** as to Bussers and Runners, and **$500,000** as to Servers, Bartenders and Barbacks. ¶ 36. In addition, the amount of gratuities that were allegedly unlawfully distributed to tip-ineligible employees was estimated to be approximately **$125,000**. ¶ 37.

Based on the above, the Parties entered into settlement negotiations with a strong sense of and appreciation for Class Members' claims, the risks and exposure Defendant faced, and the various defenses and other obstacles to Plaintiffs being able to prove their claims and obtain a favorable judgment. Although additional information could be obtained in discovery, it is

18

unlikely that further discovery would have markedly changed the Parties' analyses.  ¶ 49; <u>see</u>

<u>Frank</u>, 228 F.R.D. at 185 (approving settlement of case "in relatively *early* stages of discovery"

where parties had exchanged extensive information regarding the defendant's time and pay

practices and where counsels' negotiations, while "cooperative," had "been in no way collusive")

(emphasis added).  Against this backdrop, this factor favors final approval.

> iv.  *Plaintiffs Would Face Real Risks at Trial if This Case Proceeded*
> *(Factors 4 and 5)*

Plaintiffs and Class Counsel believe that the case is strong, but recognize the risks

inherent in a trial.  In weighing the risks of establishing liability and damages, the Court "must

only weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement."  <u>In re Austrian</u>, 80 F. Supp. 2d at 177 (internal quotation marks omitted).   A trial on

the merits would involve significant risks as to liability and damages.  ¶¶ 39-46.  Plaintiffs would

have to overcome Defendant's defenses, including, *inter alia,* that Expeditors were tip-eligible

employees who had meaningful interaction with customers and provided more than *de minimis*

customer service.  ¶ 39.  This dispute would ultimately amount to a battle of credibility, which is

inherently uncertain.  <u>Id.</u>  In addition, Plaintiffs would also have to overcome Defendant's likely

defense that Bussers and Runners did not perform a meaningful amount of side work such that

Defendant's ability to pay them at the minimum wage tip credit rate for all hours would be

jeopardized, a dispute which again would go to the credibility of the parties.  ¶ 40.

Furthermore, Plaintiffs would also likely have to overcome case law supporting the

proposition that, even a "polluted" tip pool may result only in FLSA minimum wage violations,

and not NYLL minimum wage violation, so long as Class Members were paid at or above the

minimum wage (<u>see</u> <u>Schear v. Food Scope Am., Inc.</u>, 297 F.R.D. 114, 133-34 (S.D.N.Y. 2014)

(Judge Torres); <u>Murphy v. Lajaunie</u>, No. 13 Civ. 6503 (RJS), 2016 WL 1192689 (March 21,

2016) (Judge Sullivan)). ¶ 41.  Moreover, Defendant would likely assert that, even if the tip

pool was polluted, only Bussers and Runners were impacted given the structure of 230 Fifth's tip

pool, in which Servers and Bartenders would tip out a certain fixed percentage of their tips to

Bussers, Runners and (at times) Expeditors, such that Servers, Bartenders and Barbacks would

not have had their own tip payouts affected by the Expeditor's inclusion in the tip pool – a

position that would significantly reduce Defendant's potential exposure if not entirely  preclude

any recovery on the tip-credit claim as to Servers, Bartenders and Barbacks.  ¶ 42.

Plaintiffs would also have to overcome Defendant's relatively strong argument that a

reasonable private event customer could not have believed that the "administrative and

operations charge" assessed to private events was a gratuity, in large part because of the presence

of express disclaimers stating that these fees were not gratuities.  ¶ 43.

While Plaintiffs believe that they would ultimately establish Defendant's liability,

obtaining this result would require significant factual and legal development, and Defendant

would almost certainly contest the treatment of Named Plaintiffs' claims as a class action

because they were too individualized to certify a class.  ¶ 44.  There is also a large risk inherent

in asking the jury to analyze thousands of pages of information, including, *inter alia*, payroll

records, time records, tip sheets, private event contracts, invoices and receipts, and other

documents that have already been produced or would eventually be produced in discovery, in

order to calculate potential damages.  ¶ 45.  Class Counsel is experienced and realistic, and

understands that the outcome at trial and the inevitable appeals process are inherently uncertain

in terms of outcome and duration.  ¶ 46.  The proposed Settlement alleviates these uncertainties.

> v.  *Establishing a Class and Maintaining the Class Through Trial Would Not*
>      *Be Simple (Factor 6)*

The risk of obtaining NYLL Rule 23 class certification and maintaining it through trial is

present.  Plaintiffs would need to maintain certification of the FLSA claims and obtain

certification of the NYLL claims.  Such determinations would likely be reached after extensive

and costly discovery and motion practice.  Further, in opposing class certification, Defendant

would argue that differences and types of claims among Class Members preclude certification.  ¶

44.  Plaintiffs also face challenges in meeting the more stringent requirements for Rule 23(b)(3)

certification.   Settlement eliminates the risk, expense, and delay that permeate the class

certification process.

> ### vi.   *Defendant's Ability to Withstand a Greater Judgment is Not Clear (Factor 7)*

While Defendant may be able to withstand a larger judgment, the restaurant industry is

inherently risky, fraught with intense competition in New York City.  ¶ 96.  However, a

"defendant's ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair."  Frank, 228 F.R.D. at 186 (quoting In re Austrian, 80 F. Supp. 2d at 178

n.9).  Here, the Settlement requires Defendant to make a substantial settlement payment, agreed

to following arm's length negotiations, within 40 days of final approval.  Ex. 1 at § 3.8(A).

Accordingly, this factor also favors final approval.

> ### vii.   *The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9)*

Defendant has agreed to settle this case for $425,000.00.  The Settlement amount

represents a fair value to Class Members given the attendant risks of litigation, even though

recovery could potentially be greater if Plaintiffs attained class certification, succeeded on all

claims at trial, and survived an appeal.  ¶ 50.  The determination of whether a settlement amount

is reasonable "does not involve the use of a 'mathematical equation yielding a particularized

sum.'"  Frank, 228 F.R.D. at 186 (citation omitted).  "Instead, 'there is a range of reasonableness

with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" Id. (citation omitted). "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982); see also Cagan v. Anchor Sav. Bank FSB, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million").

Based on Class Counsel's damages analysis, as discussed above, Class Counsel calculated that: (1) with respect to the minimum wage tip credit shortfall claim based on the inclusion of Expeditors in the tip pool and an assumed violation of the "80/20 Rule," the estimated class-wide damages if Plaintiffs were to prevail on all disputed issues were approximately (a) $250,000 to Runners and Bussers, and (b) $500,000 to Servers, Bartenders and Barbacks; (2) with respect to the unlawful tip distribution claim under NYLL § 196-d based on the tips that were paid to Expeditors, the estimated class-wide damages were approximately $125,000; and (3) with respect to the unlawful retention of gratuities purportedly collected from private events under NYLL § 196-d, if Plaintiffs prevailed entirely, the claim would be worth $2.5 million, although Defendant produced documents which appeared to curtail the chances of success on this claim substantially. ¶¶ 36-37. These figures are of course "best-case scenario" numbers, and do not account for the relative strengths and weaknesses of each claim. Accordingly, when Class Counsel took into account and weighed the relative strengths and weaknesses of each claim, Class Counsel calculated that a reasonable outcome on the three claims would fall somewhere in the range of $430,000, which is in line with the amount of

settlement fund.  ¶ 38.   While this total excludes liquidated damages, which would, of course, increase damages, Defendant arguably had a number of very viable defenses to each claim.  <u>See</u> <u>supra</u> at § III(C)(4) and pp. 19-31.

Of course, assessing the possible recovery in light of the attendant risks of litigation is by its nature an inexact mathematical endeavor that necessitates many reasoned assumptions.  While analysis can be done using "best case scenario" assumptions, "worst case scenario" assumptions, or any assumptions of risk in between, the conclusion is always somewhat speculative and imprecise.  Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding with litigation, the Settlement amount is reasonable and represents a fair value to Class Members warranting final approval.  ¶ 50.  The total Settlement amount is $425,000.00.  Even when this amount is reduced by attorneys' fees and expenses, Service Awards and claims administration costs, the remainder will still be substantial, and represents a significant percentage of the reasonable potential total class-wide recovery calculated by Class Counsel.  ¶ 51.  Plaintiffs have been advised of the potential upside of proceeding on the merits, but believe that the Settlement is in the best interests of the Class Members they represent.  ¶ 52.  Further, experienced labor and employment mediator Carol A. Wittenberg presided over the mediation and helped bring the Parties to a resolution.  ¶¶ 22, 53.  <u>See</u> <u>Johnson v. Brennan</u>, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *7-8, 15 (S.D.N.Y. Sept. 16, 2011) (approving FLSA settlement and noting that the Parties hired a private mediator with experience in wage and hour law); <u>Diaz v. E. Locating Serv. Inc.</u>, No. 10 Civ. 4082 (JCF), 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010) (approving settlement where Parties attended a full-day mediation session with an experienced class action mediator).

For these reasons, this factor weighs in favor of final approval.

**D.**     **Class Representatives' Merit Service Awards**

Plaintiffs respectfully request the approval of Service Awards to Class Representatives who engaged Class Counsel to bring claims against their current or former employer, and some of whom also attended the full-day mediation.  Specifically, Plaintiff Rosendo Hernandez, who spearheaded this action and prepared for and attended the mediation, requests approval of a Service Award of $10,000.00,[6] fellow named Plaintiffs Jose Encarnacion and Cynthia Gitonga request Service Awards of $2,500.00 each, and opt-in Plaintiffs Nicolas Chiquito, Frank Marzan, Andres Apolinar and Billy Quuizhpi request Service Awards of $1,250 each.  Ex. 1 at ¶ 4.2.  All Plaintiffs retained Class Counsel to pursue claims against Defendant, and all provided valuable information in support of the claims alleged in this action.  The assistance of the Plaintiffs was instrumental in reaching the Settlement in this case, and warrants approval of the modest Service Awards they seek in recognition of the services rendered to the class.

In examining the reasonableness of service awards, courts usually consider:  (1) the time and effort expended by the class representatives during the litigation; (2) any burdens sustained by the class representatives, including personal risk; and (3) the ultimate recovery.  See id.; see also Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997).  Courts recognize the important factual knowledge that class representatives bring to employment class actions, including information about employer policies and practices that affect wages.  See Frank, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims").

The requested Service Awards are reasonable in light of the time and effort that Plaintiffs expended in furtherance of the Class investigation and settlement.  The services rendered by

---

[6]     Named Plaintiff Alberto Mora also attended the mediation, but is not seeking a service award.

Plaintiffs were integral in the prosecution of the litigation, and included, *inter alia*:  (i) coming forth and engaging Class Counsel to pursue their claims and the claims of Class Members; (ii) providing documents and information to Class Counsel; (iii) assisting in the preparation of the Complaint and other pleadings; (iv) searching for relevant documents; (v) regularly meeting and communicating with Class Counsel during the litigation; (vi) communicating with other Class Members about this case; (vii) meeting and preparing for the mediation, and then attending and actively participating in the all-day mediation before Ms. Wittenberg, or otherwise making themselves available to answer questions and make decisions on behalf of the class during the mediation; (viii) undertaking the risks of being assessed with litigation costs in the event of an unsuccessful litigation; and (ix) undertaking the risk of retaliation by pursuing claims against a current or former employer and/or holding their names out in the caption of a publicly filed Complaint or by opting-in.  ¶ 78.  Without these and other efforts, this case would not have been brought, and the Settlement would not have been reached.

Furthermore, Class Representatives bore the burdens of bringing this publicly filed case, including the risk of losing the litigation, the risk of having costs assessed against them in the event of a loss, and the substantial risks of retaliation.  ¶¶ 79-81.  In the employment context, where workers are often blacklisted if considered trouble makers, class representatives are vulnerable to retaliation.  See Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007).  The Class Representatives here faced the risk that new employers could learn that they were class representatives in a lawsuit against a former employer and take adverse action against them, and each time they change jobs, they will risk retaliation in the hiring process.  ¶¶ 80-81.

Finally, the requested Service Awards, representing a combined 4.7% of the total Settlement, are also reasonable in light of the settlement amount of $425,000.00.  ¶ 82; see

Johnson v. Brennan, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards to four named plaintiffs from a $440,000 settlement fund);  Matheson v. T-Bone Rest., LLC, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (approving service awards of up to $45,000 which totaled to roughly ***10%*** of the $495,000 fund) (emphasis added); Reyes v. Altamarea Grp., LLC, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of up to $15,000 totaling roughly ***17%*** of the $300,000 fund) (emphasis added).  Here, the requested Service Awards are reasonable and should be granted.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the Proposed Final Order:  (1) certifying the Settlement Class; (2) granting final approval of the Settlement; and (3) approving Service Awards for Class Representatives.

Dated: August 30, 2017
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____

    David E. Gottlieb
    Tanvir H. Rahman
    Alex J. Hartzband

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
dgottlieb@wigdorlaw.com
trahman@wigdorlaw.com
ahartzband@wigdorlaw.com

*Attorneys for Plaintiff and the Proposed*
*FLSA Collective and NYLL Class*